IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KAREN ZWIEZINSKI, ) | Case No. 1:20-cv-1555 |
| ) | |
| Plaintiff, ) | JUDGE SARA LIOI |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff, Karen Zwiezinski, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g) and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, and any error was harmless, I will recommend that the Commissioner's final decision denying Zwiezinski's application for DIB be AFFIRMED

**I.      Procedural History**

Zwiezinski applied for DIB on September 27, 2017. (Tr. 183-190).[1] She said that she became disabled on March 30, 2017, due to: "1. Degenerative Disc Disease, 2. Sciatica, 3. Chronic Neck Pain, [and] 4. High Blood Pressure." (Tr. 189, 216). The Social Security

---

[1] The administrative transcript appears in ECF Doc. 11.

Administration denied Zwiezinksi's application initially and upon reconsideration. (Tr. 73-98). Zwiezinski requested an administrative hearing. (Tr. 117-18).

ALJ Catherine Ma heard Zwiezinksi's case on February 22, 2019 and denied the claim in an April 29, 2019 decision. (Tr. 22-72). In doing so, the ALJ determined that Zwiezinski had the residual functional capacity ("RFC") to perform light work, except that:

> The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. The claimant is limited to frequent exposure to extreme cold, vibration and hazards, such as unprotected heights.

(Tr. 29). Based on vocational expert ("VE") testimony that an individual with her age, experience, and RFC could work in such representative occupations as a cashier II, merchandise marker, or sales attendant, the ALJ determined that Zwiezinski wasn't disabled because she could perform a significant number of jobs in the national economy. (Tr. 33). On May 13, 2020, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). And, on July 14, 2020, Zwiezinski filed a complaint to obtain judicial review. ECF Doc. 1.

II.  **Evidence**

    A.  **Personal, Educational, and Vocational Evidence**

Zwiezinski was born on May 12, 1965, and she was 51 years old on the alleged onset date. (Tr. 189). She had a high school education. (Tr. 46, 217). Zwiezinski had prior work as a kitchen manager, but the ALJ determined that she was no longer able to perform that work. (Tr. 32, 66, 217).

    B.  **Objective Medical Evidence**

From August 2016 through August 2018, Zwiezinski received treatment from Gheorghe Ignat, MD, for chronic pain, fibromyalgia, alcoholic hepatitis, plantar fasciitis, and osteoarthritis

2

of the spine with radiculopathy. (Tr. 386, 389, 392, 854, 857). Zwiezinski regularly reported diffuse pain in the shoulders and neck, leg numbness, and sleeping issues. (Tr. 387, 390, 393, 395, 855, 858). In March and June 2017, Zwiezinski said that she exercised in a pool and that she'd had a neurotransmitter removed from her cervical spine because it didn't help her back pain. (Tr. 390, 393). In October 2017, Zwiezinski told Dr. Ignat that her August 2017 laminectomy didn't stop her back and leg pain, but she said that radiofrequency ablation and cutting out drinking had made her feel better in March 2018. (Tr. 387, 858). Examinations regularly showed normal range of motion in the cervical spine, upper extremities, and lower extremities; normal motor strength; intact sensation; tenderness in the plantar fascia; and up to seven fibromyalgia trigger points (including the multiple trapezius, lateral epicondyles, gluteal, second ribs, paraspinal thoracic, paraspinal lumbar, and greater trochanter). (Tr. 386-87, 389-91, 393-95, 856, 859). But she went from having normal range of motion in the lumbar spine in March and June 2017, to decreased range of motion in the lumbar spine in October 2017, March 2018, and August 2018. (Tr. 386-87, 389-91, 393-95, 856, 859). Dr. Ignat regularly prescribed pain medications, recommended Zwiezinski use a home exercise program to alleviate her symptoms, and directed her to stop drinking. (Tr. 389-90, 395). And in June 2017, Dr. Ignat indicated that Zwiezinski could work full time notwithstanding her symptoms. (Tr. 389-90).

From April 12, 2017, through October 25, 2018, Zwiezinski regularly saw Mohan Kareti, MD, for treatment of low back pain radiating through her left leg and foot, neck pain, and left leg weakness. (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). And in May 2018, Zwiezinski started reported pain, numbness, and weakness in her right leg (which Dr. Kareti said was possibly related to overcompensating for her left leg weakness). (Tr. 39-43, 1003-21). Throughout her treatment, Zwiezinski regularly reported that

3

standing and walking for more than 15 minutes exacerbated her pain, she had difficulty rising from a seated position, she had difficulty bending over to pick things up, and she had trouble bearing weight on her left foot due to her numbness, weakness, and pain. (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). Zwiezinski also regularly indicated that epidural steroid injections, lumbar facet blocks, radiofrequency ablation, using a TENS unit, and an August 2017 laminectomy hadn't helped her pain. (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). But she had moderate relief from medications (including hydrocodone and Norco), and her pain went away completely when she was sitting or resting. (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). Examinations consistently showed tenderness in the spine, but she also had full range of motion in the spine and neck, normal gait, normal ambulation, and normal station. (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). Despite Zwiezinski's symptoms, Dr. Kareti regularly noted that she was able to perform or complete her daily living activities. (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). But he noted that she had limitations and challenges in performing her daily living activities (including difficulty getting dressed and putting on shoes) on October 6, 2017; December 14 and 28, 2017; May 10, 2018; and August 12, 2018. (Tr. 485, 492, 941, 1010, 1012).

On February 3, 2017, Zwiezinski told Andrea Boyd, PA-C, that she had sharp stabbing pain in her left heel, especially when she put weight on it. (Tr. 366). She also said that she'd had right arm pain after tripping in her home. (Tr. 366). Over-the-counter medication gave her minimal relief. (Tr. 366). Boyd noted that x-rays showed no fracture or dislocation in the arm and mild posterior calcaneal spurring in Zwiezinski's left foot. (Tr. 371). Examination showed

4

tenderness in Zwiezinski's right arm and left foot, but she had normal range of motion in her back and all extremities. (Tr. 368).

On March 30, 2017, Zwiezinski told Rachel Naumann, PAC, that she'd had constant, moderate back pain radiating down her leg after injuring herself while lifting at home. (Tr. 359). Zwiezinski said that moving, bending, and walking exacerbated her pain, but resting and sitting made it feel better. (Tr. 359). Examination showed normal range of motion in the back and all extremities, normal alignment in the back, normal strength, and the ability to walk without difficulty, limp, or foot drop. (Tr. 361). Naumann noted that an x-ray revealed no acute findings, but there were degenerative changes and mild anterior compression deformities in the lower thoracic spine. (Tr. 361, 365). Naumann diagnosed Zwiezinski with acute sciatica, prescribed pain relievers, and recommended exercise. (Tr. 363).

On May 22, 2017, Zwiezinski started physical therapy after she was diagnosed with acute sciatica. (Tr. 306-310). On June 7, 2017, Zwiezinski's physical therapist noted that she'd shown minimal improvement, and her physical therapy was discontinued on August 3, 2017. (Tr. 309-10). Zwiezinski started physical therapy again in October 2017, after she'd had her lumbar laminectomy. (Tr. 579-88). And, although she reported not being in pain and working on her home exercise program on October 26, 2017, she regularly reported to Dr. Kareti that physical therapy gave her no benefit. (Tr. 430, 494, 582).

On June 28, 2017, Howard Potash, MD, noted that an MRI showed multilevel central spinal canal stenosis most severe at the I4-5 level, significant foraminal narrowing on the left at L5-S1 with impingement of the left L5 nerve root, and right adnexal cyst and uterine fibroid. (Tr. 357).

On August 2, 2017, Zwiezinski saw Rishi Goel, MD, for a neurosurgical evaluation for her lower back and leg pain. (Tr. 603). Zwiezinski told Dr. Goel that epidural steroid injections and physical therapy hadn't helped her pain and numbness, and she'd had difficulty with balancing. (Tr. 603). Examination showed full strength in the upper and lower extremities, normal gait, and normal ambulation (Tr. 606). Dr. Goel recommended a lumbar laminectomy, which she performed on August 21, 2017. (Tr. 351, 607).

On May 8, 2018, Benoit Luyckx, MD, noted that an MRI of Zwiezinski's spine showed multilevel degenerative changes, including moderate disc narrowing, moderate diffuse disc bulging, moderate to severe central canal stenosis, moderate to severe lateral recess stenosis, degenerative hypertrophic facet arthrosis, hypertrophy, and moderate to severe neural foraminal stenosis. (Tr. 593-94).

On August 30, 2018, Zwiezinski told Darshan Mistry, MD, that she had blisters and lesions on her right foot, and her low back pain affected her ability to perform daily functional activities. (Tr. 870). Examination showed no peripheral edema, normal gait, normal skin color and pigmentation, no visible rash, scattered blisters and ulceration-like lesions on her palms and plantar feet, and normal sensation. (Tr. 873). Dr. Mistry prescribed calamine lotion and Keflex for the skin lesions. (Tr. 874). At a follow-up on September 5, 2018, Zwiezinski was diagnosed with hand, foot, and mouth disease and prescribed a triamcinolone cream. (Tr. 885, 890).

On January 7, 2019, Zwiezinski told Gabriel Smith, MD, that she couldn't perform normal daily living activities due to pain and discomfort in her les. (Tr. 1025). She said that her treatment through that time had not helped to relieve her symptoms. (Tr. 1025). Dr. Smith recommended decompressive surgery or a spinal cord stimulator. (Tr. 1025).

C. **Opinion Evidence**

1. **Treating Physician Opinion – Mohan Kareti, MD**

Dr. Kareti completed a questionnaire on November 15, 2017, in which he indicated that Zwiezinski had: (1) no clinical abnormalities or gross anatomical abnormalities; and (2) left low back pain and pain in her left leg to foot. (Tr. 401). Dr. Kareti indicated that Zwiezinski had left leg weakness and muscle aches, but her numbness had improved. (Tr. 401). Dr. Kareti also said that Zwiezinski didn't have limited range of motion in her joints or spine. (Tr. 401).

2. **Treating Physician Opinion – Gheorghe Ignat, MD**

Dr. Ignat completed a questionnaire on November 2, 2017, in which he indicated that Zwiezinski had pain limiting flexion and extension in her lumbar spine. (Tr. 384). Notwithstanding her limited range of motion, Dr. Ignat opined that Zwiezinski had no motor loss, normal ability to perform fine and gross manipulation, and a normal gait. (Tr. 384).

3. **Consultative Examiner Opinion – Karen Sarpolis, MD**

On August 3, 2018, consultative examiner Karen Sarpolis, MD, evaluated Zwiezinski's physical capacity. (Tr. 563-70). Dr. Sarpolis determined that Zwiezinski could lift up to 10 pounds frequently and occasionally; stand and/or walk for at least 2 hours in an 8-hour day; sit for up to 6 hours in an 8-hour day; and push and/or pull without limitation. (Tr. 564). Zwiezinski could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 565). She had no manipulative, visual, communicative, or environmental limitations. (Tr. 566-67). In support of her evaluation, Dr. Sarpolis explained:

> A review of the evidence supports the prior determination. Claimant is treated moderately aggressively with injections. [Physical examination] has decreased ROM. +SLR DDD is documented on imaging. MER notes she get [*sic*] no or temporary relief. Pain radiates to her foot. She has had many injections spanning several years and is in chronic pain [management]. She also takes narcotics and lyrica and NSAIDS. She has been treated and failed with surgery for the back. In

7

a[d]dition she lists [fibromyalgia] and chronic alcoholic hepatitis and plantar fasciit[is].

(Tr. 570).

### 4. State Agency Consultants' Opinions

On November 24, 2017, state agency medical consultant Leslie Green, MD, evaluated Zwiezinski's physical capacity based on a review of the medical records. (Tr 79-81). Dr. Green determined that Zwiezinski could lift up to 10 pounds frequently and 20 pounds occasionally; stand and/or walk for up to 6 hours in an 8-hour workday; sit for up to 6 hours in an 8-hour workday; and push and/or pull without limitation. (Tr. 79). Zwiezinski could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (Tr. 79-80). She could never climb ladders, ropes, or scaffolds. (Tr. 79). And she could balance without limitation. (Tr. 79). Zwiezinski had no manipulative, visual, or communicative limitations. (Tr. 80). And she needed to avoid concentrated exposure to extreme cold, vibration, and hazards (machinery and heights). (Tr. 80). Based on her conclusions, Dr. Green determined that Zwiezinski was able to perform light work. (Tr. 81). On March 5, 2018, Diane Manos, MD, concurred with Dr. Green's assessment. (Tr. 92-95).

### D. Hearing Testimony

Zwiezinski testified at the ALJ hearing. (Tr. 45-65). Zwiezinski said that she couldn't return to working full time because she had difficulty standing and sitting. (Tr. 53). She said that she had weakness in both legs and numbness in one leg. (Tr. 53). Her pain and numbness started in her lower back and radiated down her leg through her left toes. (Tr. 53). Her right leg felt like it was being twisted from her groin to her kneecap or shins. (Tr. 53-54). Zwiezinski said that she was scheduled for a second laminectomy in March 2019, and that her surgeon expected it would help relieve the nerve pain in her legs but not her back. (Tr. 55).

8

Zwiezinski testified that on a typical day, she would wake up in her recliner, take medicine, drink water, walk outside to smoke a cigarette, return to her recliner, get a bowl of cereal, nap, watch TV, and read. (Tr. 59-60). She didn't have any hobbies, but she would sometimes visit with family. (Tr. 59-60). She could hold her granddaughter on her lap while sitting, but she couldn't pick her up while standing. (Tr. 60). She could bathe herself, but her leg issues made getting in and out of the shower difficult. (Tr. 56). She could wash dishes, do "small shopping" a couple times a week, and do laundry. (Tr. 56-57). She could do "light maintenance," like wiping out a microwave. (Tr. 57). She cooked, but she didn't like doing it because she'd done it her whole life. (Tr. 57). Zwiezinski said that doing any of these tasks was a "process" because she needed to take sitting breaks throughout. (Tr. 56-57). And when she sat, she needed to be in her recliner with her legs elevated. (Tr. 57, 61-62). Zwiezinski said that she could stand for up to 15 minutes and walk for up to 30 minutes before she needed to sit. (Tr. 61, 64). She also used ice for her pain, and her medication gave her temporary relief. (Tr. 62).

### E. Zwiezinksi's Functional & Disability Reports

In a November 13, 2017 function report, Zwiezinski said that she didn't do many activities beyond sitting, visiting with family, and watching television. (Tr. 235-41). She could grocery shop for a few items, take care of her cats, cook twice a day with breaks, and do up to one chore a day (cleaning/laundry) with breaks to sit. (Tr. 235-39). She had to sit to get dressed and had a hard time bathing because she was afraid that she'd fall. (Tr. 235). She wasn't able to sleep in her bed, and she slept in 2-hour increments in her recliner. (Tr. 235). She said that bending hurt, lifting affected her back, and stair climbing was slow and painful. (Tr. 239). And she needed to rest for 5-10 minutes before she could resume walking after she took a break. (Tr. 239).

9

In an unsigned disability report on January 17, 2018, Zwiezinski indicated that her pain and discomfort had severely increased and her range of motion had significantly decreased. (Tr. 243). Zwiezinski indicated that she couldn't run errands, work around the house, or do most other activities due to pain, fatigue, discomfort, and medication side effects. (Tr. 246). She said that she needed assistance in completing daily activities. (Tr. 246). And she had difficulty sitting, standing, walking, and moving. (Tr. 246). She also said that she couldn't bend, twist, reach, or lift over 10 pounds. (Tr. 246).

### III. Law & Analysis

#### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own

regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

### B. Step Four: Medical Opinions

Zwiezinski argues that the ALJ failed to apply proper legal standards or reach a decision supported by substantial evidence when she determined that Dr. Sarpolis's opinion was "less persuasive." ECF Doc. 13 at 11-15. Specifically, Zwiezinski asserts that the ALJ failed to adequately explain *how* objective evidence was inconsistent with Dr. Sarpolis's opinion. ECF Doc. 12-13. She contends that no evidence in the record supported the ALJ's finding that Dr. Sarpolis had relied "heavily" on her subjective complaints. ECF Doc. 13 at 13. Zwiezinski argues that the ALJ didn't adequately consider her testimony and functional reports detailing her daily living activities. ECF Doc. 13 at 13. And she asserts that substantial evidence didn't support the ALJ's inconsistency finding because objective medical evidence, her hearing testimony, and her functional reports were consistent with Dr. Sarpolis's opinion. ECF Doc. 13 at 12-15. The Commissioner disagrees. ECF Doc. 15 at 18-21.

At Step Four of the sequential analysis laid out in the regulations, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how [she] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a

11

minimum, the ALJ must explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). If the ALJ finds that two or more medical opinions "are both *equally well-supported and consistent* with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted) (emphasis added). Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5). The ALJ isn't required to package her explanation into a single, tidy paragraph; rather, the ALJ's decision is read "as a whole and with common sense." *Buckhannon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010).

The ALJ applied proper legal standards in discounting Dr. Sarpolis's opinion. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ properly explained that she found Dr. Sarpolis's opinion inconsistent with other evidence in the medical record. 20 C.F.R. § 404.1520c(b)(2), (c)(2). Here, Zwiezinski is right that the ALJ didn't point to specific contrasting evidence within the same paragraph in which she evaluated Dr. Sarpolis's opinion. *See* (Tr. 32). But when read within the context of the ALJ's summary of the objective medical evidence, the ALJ's decision as a whole was sufficient for a subsequent reviewer to reasonably trace how the ALJ arrived at her inconsistency determination. *Compare* (Tr. 30-31[inconsistencies in summary of evidence]), *with* (Tr. 563-570 [Sarpolis's opinion]). The ALJ's finding that Dr. Sarpolis's opinion appeared to be based on Zwiezinski's own reporting (rather than objective medical findings) was also a proper legal ground for discounting the opinion (*i.e.*, supportability). 20 C.F.R. § 404.1520c(b)(2), (c)(1). Further, the ALJ didn't misrepresent records regarding Zwiezinski's

ability to perform daily living activities, but accurately summarized treatment notes reporting her ability to perform daily living activities *notwithstanding* her pain and other symptoms. *Compare* (Tr. 30-31), *with* (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). And because the ALJ complied with 20 C.F.R. § 404.1520c(a)'s articulation requirement, she applied proper legal standards in evaluating Dr. Sarpolis's opinion.

    Substantial evidence also supported the ALJ's inconsistency finding. Such evidence includes: (1) notes regularly indicating that physical examination showing normal range of motion in the cervical spine and all extremities, normal motor strength, intact sensation, normal gait, normal ambulation, and normal station, (Tr. 293-96, 300, 314-35, 338-44, 361, 368, 386-87, 389-91, 393-95, 430-33, 437-55, 476-98, 510-18, 606, 856, 859, 873, 939-52, 993-97, 1003-21); (2) notes regularly indicating that Zwiezinski could improve through a home exercise program and was able to perform her home exercises, (Tr. 363, 389-90, 395, 582); (3) Dr. Ignat's June 2017 note indicating that Zwiezinski could work full time notwithstanding her symptoms, (Tr. 389-90); and (4) Dr. Kareti's notes indicating that – despite the symptoms reported and noted on examination – Zwiezinski could nevertheless perform or complete her daily living activities, (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). And, because a reasonable mind could accept that evidence as being inconsistent with Dr. Sarpolis's opinion, the ALJ's finding that Dr. Sarpolis's opinion was inconsistent with objective medical evidence cannot be second-guessed by this court. *Biestek*, 139 S. Ct. at 1154; *Jones*, 336 F.3d at 476; *Rogers*, 486 F.3d at 241; 42 U.S.C. § 405(g).

    I agree with Zwiezinski that other evidence – including her testimony, her function reports, and treatment notes reflecting failed or ineffective treatment, declining range of motion in some months, and limitations or difficulty performing daily living activities – could have

13

supported a different finding. (Tr. 293-96, 300, 314-35, 338-44, 359, 366, 371, 386-87, 389-91, 393-95, 430-33, 437-55, 476-98, 510-18, 603, 856, 859, 870, 939-52, 993-97, 1003-21, 1025). But even if a preponderance of the evidence would have supported a different conclusion, and even if the court would have reached a different conclusion if it were reviewing Zwiezinski's claim in the first instance, the ALJ's decision must nevertheless be affirmed because it is supported by substantial evidence. *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 477.

I also agree with Zwiezinski that substantial evidence doesn't support the ALJ's finding that Dr. Sarpolis's opinion was based on Zwiezinski's subjective complaints. Nothing in Dr. Sarpolis's opinion indicates that she considered – much less relied upon – Zwiezinski's subjective complaints. *See generally* (Tr. 563-70). Instead, Dr. Sarpolis: (1) specifically indicated that the limitations in her opinion were based on her review of the objective medical evidence; and (2) summarized objective records of Zwiezinski's treatment history, the effectiveness of treatment, diagnostic imaging results, and physical examination findings that she believed supported the limitations in her opinion. (Tr. 570). Nevertheless, because the ALJ's finding that Dr. Sarpolis's opinion was inconsistent with objective medical evidence in the record standing alone could have independently justified the decision to discount Dr. Sarpolis's opinion, the ALJ's inclusion of an alternative basis for discounting the opinion which didn't pass muster on judicial review was harmless. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (An error in weighing medical opinions is harmless when "the Commissioner has met the goal of [the regulations] – the provision of the procedural safeguard of reasons."); *see also DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F. App'x 173, 176 (9th Cir. 2009) (Improper reason was harmless when the ALJ gave other, legitimate reasons for discounting an opinion).

14

Accordingly, because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I will recommend that the court AFFIRM the ALJ's decision to discount Dr. Sarpolis's opinion.

### C. Step Four: Subjective Symptom Complaints

Zwiezinski argues that the ALJ failed to consider the SSR 16-3p factors and provide specific reasons for finding her subjective symptom complaints inconsistent with other evidence in the record. ECF Doc. 13 at 15-17. Specifically, she asserts that the ALJ failed to discuss the nature of her pain, precipitating and aggravating factors, and the effects of her medication. ECF Doc. 13 at 17. She also asserts that the regulations specifically prohibited the ALJ from "disregard[ing]" her subjective complaints on the ground that they were not substantiated by objective medical evidence. ECF Doc. 13 at 16. The Commissioner disagrees. ECF Doc. 15 at 12-17.

A claimant's subjective symptom complaints are among the evidence that an ALJ must consider in assessing a claimant's RFC at Step Four. *See* 20 C.F.R. § 404.1520(e); *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989) ("Subjective complaints of pain or other symptoms may support a claim of disability."). Generally, an ALJ must explain whether she finds the claimant's subjective complaints consistent with objective medical evidence and other evidence in the record. SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (The ALJ must clearly explain her reasons for discounting subjective complaints). In conducting this analysis, the ALJ may consider several factors, including claimant's efforts to alleviate her symptoms, the whether any treatment was effective, and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. § 404.1529(c)(3); *see also Temples v. Comm'r of Soc.*

15

*Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible). The regulations don't require the ALJ to discuss each factor or each piece of evidence, but only to acknowledge the factors and discuss the evidence that supports her decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each [factor], so long as he acknowledged and examined those [factors] before discounting a claimant's subjective complaints." (quotation omitted)); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("'[A]n ALJ is not required to discuss all the evidence submitted.'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

      The ALJ applied proper legal standards in evaluating Zwiezinski's subjective symptom complaints. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. Here, the ALJ complied with the articulation requirement in SSR 16-3p by explaining that she found Zwiezinski's subjective complaints inconsistent with the record as a whole. (Tr. 29-30); SSR 16-3p, 2016 SSR LEXIS 4 *15; *Felisky*, 35 F.3d at 1036. Further, the ALJ didn't improperly rely on only the objective medical evidence in evaluating Zwiezinski's subjective symptom complaints, but evaluated her complaints based on all the evidence in the longitudinal record. SSR 16-3p, 2016 SSR LEXIS 4 *10-11 (indicating that the ALJ should not rely "solely on objective medical evidence" in evaluating subjective complaints); *see also* SSR 12-2p, 2012 SSR LEXIS 1, at *14 (Jul. 25, 2012) (indicating that the ALJ should consider *all the evidence*, not just objective medical evidence, in evaluating fibromyalgia pain). Reading the ALJ's decision as a whole, the ALJ considered Zwiezinski's pain complaints in light of: (1) the objective medical and opinion evidence reflecting her functional abilities, (Tr. 30-32); (2) her testimony and statements about what activities she could do and how her symptoms affected them, (Tr. 29); and (3) the different

16

kinds of treatment she used and their effectiveness, (Tr. 30-32). And, although the ALJ wasn't required to specifically discuss each of the regulatory factors in her decision, she specifically acknowledged that she considered the factors set out in SSR 16-3p in evaluating Zwiezinski's subjective complaints and RFC. (Tr. 31); *Renstrom*, 680 F.3d at 1067; *Simons*, 114 F. App'x at 733.

Substantial evidence also supported the ALJ's finding that Zwiezinski's subjective complaints were inconsistent with other evidence in the record. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. As discussed above, such evidence includes: (1) notes regularly indicating that physical examination showing normal range of motion in the cervical spine and all extremities, normal motor strength, intact sensation, normal gait, normal ambulation, and normal station, (Tr. 293-96, 300, 314-35, 338-44, 361, 368, 386-87, 389-91, 393-95, 430-33, 437-55, 476-98, 510-18, 606, 856, 859, 873, 939-52, 993-97, 1003-21); (2) notes regularly indicating that Zwiezinski could improve through a home exercise program and was able to perform her home exercises, (Tr. 363, 389-90, 395, 582); (3) Dr. Ignat's June 2017 note indicating that Zwiezinski could work full time notwithstanding her symptoms, (Tr. 389-90); and (4) Dr. Kareti's notes indicating that – despite the symptoms reported and noted on examination – Zwiezinski could nevertheless perform or complete her daily living activities, (Tr. 293-96, 300, 314-35, 338-44, 430-33, 437-55, 476-98, 510-518, 939-52, 993-97, 1003-21). *Biestek*, 139 S. Ct. at 1154; *Jones*, 336 F.3d at 476. And, even if a preponderance of other evidence in the record could have supported a different finding, this court is not permitted to second-guess the ALJ's reasoning when substantial evidence supported it. *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 477.

17

Accordingly, because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, the ALJ's finding that Zwiezinski's subjective complaints weren't consistent with other evidence in the record should be AFFIRMED.

## IV. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, and any error was harmless, I recommend that the Commissioner's final decision denying Zwiezinski's application for DIB be AFFIRMED

Dated: July 2, 2021

Thomas M. Parker
United States Magistrate Judge

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).